# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
Sep 06, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America<br>v.<br>Darren Sever<br><br>*Defendant(s)* | Case No. **1:24-mj-00104-SAB** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **Apirl 4, 2024, through June 4, 2024** in the county of **Fresno** in the **Eastern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2252(a)(2) | Receipt of material involving the sexual exploitation of a minor Penalties: 20 years of imprisonment with man. min. of 5 years; fine of up to $250,000; up to a lifetime term of supervised release with man. min. of 5 years; $5,100 special assessment |
| Title 18, United States Code, Section 2252(a)(4)(B) | Possession of material involving the sexual exploitation of a minor Penalties: 20 years of imprisonment; fine of up to $250,000; up to a lifetime term of supervised release with man. min. of 5 years; $5,100 special assess. |

This criminal complaint is based on these facts:

See attached affidavit of HSI TFO Fernando Rosario attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Fernando Rosario, HSI Task Force Officer
*Printed name and title*

Sworn to me in accordance with Fed.R.Crim.P. 4.1 by email and telephone.

Date: **Sep 6, 2024**

*Judge's signature*

City and state: Fresno, California

Hon. Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
BRITTANY M. GUNTER
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>DARREN SEVER,<br><br>                      Defendant. | CASE NO.<br><br>AFFIDAVIT OF FERNANDO ROSARIO IN SUPPORT OF CRIMINAL COMPLAINT |

I, Fernando Rosario, a Task Force Officer with U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Fresno, California, being duly sworn, depose and state as follows:

**I.      INTRODUCTION**

1.      This affidavit is in support of a criminal complaint and request for issuance of an arrest warrant for **Darren SEVER** ("**SEVER**") for violations of 18 U.S.C. §§ 2252(a)(2) (receipt of material involving the sexual exploitation of a minor) and 2252(a)(4)(B) (possession of material involving the sexual exploitation of a minor). Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that between at least on or April 4, 2024, and on or about June 4, 2024, within the Eastern District of California, **SEVER** received and possessed material

depicting minors engaged in sexually explicit conduct, as defined in § 2256, and in violation of §§ 2252(a)(2) and 2252(a)(4)(B).

2. The information contained in this affidavit is based upon my personal knowledge of the investigation, my training and experience, and information related to me by other law enforcement officers and/or agents. Because this affidavit is written solely for the purpose of establishing probable cause for a criminal complaint and issuance of an arrest warrant, every detail of the investigation has not been included herein.

## II.   AGENT'S BACKGROUND

3. I, Fernando Rosario, am a duly qualified Peace Officer employed by the City of Fresno Police Department and have been employed as a full-time sworn Peace Officer in the State of California for the past eight years. I am also a Homeland Security Investigations (HSI) Task Force Officer (TFO) since March of 2021 and am currently assigned to the Central California Internet Crimes Against Children (ICAC) Task Force. As an ICAC TFO, my duties involve investigating internet crimes involving the sexual exploitation of children, sexual assault crimes, such as lewd and lascivious acts, rape by force, sodomies, sexual penetration, sexual batteries, and violent sexual crimes.

4. Prior to my assignment as an ICAC TFO, I was assigned to the Fresno Police Department Sexual Assault Unit for one year and the Southwest Special Response Team for two years. Before those assignments, I was assigned to Fresno Police Department's Southwest Policing District Patrol Division for a year. Throughout my tenure as a Detective and Police Officer in my various assignments, I worked as either the primary or assisting officer in various criminal investigations such as sexual assaults, robberies, murders and attempted murders, carjackings, shootings, stabbings and other violent crimes. I have also worked as the primary or assisting Officer in investigations of illegal weapons, narcotics, stolen vehicles, and other crimes.

5. Prior to my employment with the Fresno Police Department, I was employed as a Peace Officer for 1 year as Deputy assigned to the Courts for the Fresno County Sheriff's Office and 2 years as a Level 1 Reserve Police Officer for the Mendota Police Department.

6. In addition to the above related work experience, I have attended and successfully completed a Peace Officer's Standards and Training (P.O.S.T.) certified Police Academy. Further, I

have attended a 40-hour Institute of Criminal Investigations (ICI) Introduction to Internet Investigations class, a 40-hour ICI Sexual Assault Investigations class, a 16-hour ICAC Investigations of Cybertips class, and an eight-hour California Narcotic Officers' Association (CNOA) Chasing Cellphone's course.

7. As an ICAC TFO with HSI, I have received training in the investigation and prosecution of violations of various federal laws, including those related to the sexual exploitation of children. I have received specialized training related to crimes against children. I have interviewed multiple victims and witnesses for investigations involving child sexual exploitation; the receipt, distribution, and possession of material depicting minors engaged in sexually explicit conduct; and other crimes against children. I have observed and reviewed thousands of examples of material depicting minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

8. As an ICAC TFO, I am also authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. Moreover, I am a TFO who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251 (sexual exploitation of children), 2252 (certain activities relating to material involving the sexual exploitation of minors), and 2422 (coercion and enticement).

### III. APPLICABLE LAW

9. This investigation concerns alleged violations of 18 U.S.C. § 2252, relating to material involving the sexual exploitation of minors.

a. 18 U.S.C. § 2252(a)(2) prohibits the knowing receipt of any visual depiction of minors engaging in sexually explicit conduct, if the visual depiction had been mailed, shipped, or transported in interstate or foreign commerce, or if it contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

b. 18 U.S.C. § 2252(a)(4)(B) prohibits the possession of one or more matters that contain visual depictions of minors engaged in sexually explicit conduct, and that have been mailed, shipped, or transported in interstate or foreign commerce, of it is contains materials that have been mailed, shipped, or transported, by any means, including by computer.

3

## IV. DEFINITIONS

10. The following definitions apply to this affidavit:

   a) The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

   b) The term "sexually explicit conduct," as used in 18 U.S.C. § 2256(2)(A), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

   c) The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disk or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

   d) The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

   e) "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the Internet service provider assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static if an Internet service provider assigns a user's computer a particular IP address each time the computer accesses the Internet.

V.       **STATEMENT OF PROBABLE CAUSE**

11.     In June 2024, the Central Valley Internet Crimes Against Children (ICAC) Task Force received information from the National Center for Missing and Exploited Children (NCMEC) about an individual uploading suspected child pornography to Synchronoss Technologies, Inc. (Synchronoss), which is Verizon's cloud service for mobile phones and computers. The information revealed that Synchronoss reported to NCMEC that the internet protocol (IP) address 172.13.248.41 was associated with the upload of an image depicting suspected child pornography to Synchronoss on June 4, 2024, at approximately 16:51:31 Universal Time Coordinated (UTC). The information Synchronoss provided to NCMEC also revealed the telephone number (559) 246-3276 was suspected to be associated with the upload. NCMEC indicated that the telephone number (559) 246-3276 appeared to be a Verizon number associated with **Darren Sever** (**SEVER**), at an address of "26628 PO BOX," in Fresno, California. NCMEC obtained that information using its "Phone Number Geo-Lookup" function. The information from NCMEC also indicated that based on its "IP Geo-Lookup" function, the IP address 172.13.248.41 appeared to resolve out of the Fresno-Visalia, California metro area.

12.     I viewed the image that Synchronoss reported to NCMEC was uploaded to Synchronoss on June 4, 2024, at approximately 16:51:31 UTC. Based on my training and experience, I believe the file that was reportedly uploaded to Synchronoss from IP address 172.13.248.41 meets the definition of a depiction of a minor engaged in sexually explicit conduct, within the meaning of 18 U.S.C. § 2256(2). The file contained an image which appeared to depict three minor children laying on a bed. Based on my training and experience, the minors all appeared to be between the ages of 12-14 years of age and appeared to be real children based on their growth and development. All three minors were fully nude and exposing their genitals to the camera. There was one male minor and two female minors. The male was in the middle of the females and exposing his penis, which was fully erect. The two females were on each side of the male and exposing their breasts and genitalia to the camera.

13.     On June 27, 2024, a California Superior Court Judge in and for the County of Fresno authorized the disclosure of the subscriber information for telephone number (559) 246-3276. On July 30, 2024, Verizon provided the subscriber information for telephone number (559) 246-3276:

Activation Date: June 16, 2018

    Contact Name: Laurie Sever

    Telephone Number: (559) 960-9581

    Address: 235 W. Lexington Avenue Fresno, CA 93711

14. On June 27, 2024, a summons was sent to AT&T for the subscriber information for the IP address 172.13.248.41 used on June 4, 2024, at approximately 16:51:31 UTC. This is the date and time in which the above-described image depicting minors engaged in sexually explicit conduct was reportedly uploaded to Synchronoss. On June 29, 2024, AT&T provided the following information:

    Subscriber Name: Darren SEVER

    Service Address: 235 W. Lexington Way Apt 203, Fresno, CA 93711

    Subscriber Address: PO BOX 26628 Fresno, CA 93729-6628

    Telephone Number : (559) 449-3777

    Account Number : 114951714

    Start of Service: August 2, 2017

    Email User ID: Darren1812@Att.net and KingBubba35@yahoo.com

The AT&T records also indicated the account creation date was November 22, 2011, with additional service dates of June 8, 2012, and August 2, 2017.

**PRIOR CONVICTION AND SEX OFFENDER REPORTING**

15. On or about July 15, 1999, **SEVER** pled nolo contendere to two counts of violating California Penal Code 288(a) (lewd and lascivious act with a minor) under Fresno County Superior Court case number CF99629254-4. **SEVER** was subsequently sentenced to 365 days in jail, five years of formal probation and required to register as a sexual offender. On or about April 17, 2024, **SEVER**'s requirement to register as a sexual offender ended.

16. Law enforcement records checks were conducted on **SEVER**, which revealed **SEVER** provided the address of 235 W. Lexington Avenue Apt/Unit No. 203 Fresno, CA 93711, and the telephone number (559) 246-3276 as his address and telephone number as part of his required sex offender registration as of December 21, 2023. **SEVER** also annotated his emergency contact as his wife, Laurie Sever, and her contact telephone number as ending in 9581. The subscriber records from

1   Verizon related to the (559) 246-3276 number indicated the 9581 number was an associated phone
2   number for billing.
3       17.    It should be noted again, the internet service address provided by AT&T as associated
4   with IP address 172.13.248.41 on June 4, 2024, at approximately 16:51:31 UTC, is the same address that
5   **SEVER** provided to law enforcement as part of his sex offender registration. The phone number that
6   Verizon reported was subscribed to **SEVER**'s wife is the same phone number **SEVER** provided as his
7   phone number as part of his sex offender registration. It is also the same phone number that
8   Synchronoss reported to NCMEC was suspected to be associated with the upload of the image of child
9   pornography to Synchronoss on June 4, 2024.

***SURVEILLANCE CONDUCTED AT SEVER'S PREVIOUS REGISTERED SEX OFFENDER ADDRESS***

12       18.    The investigative team conducted surveillance at **SEVER**'s previous registered sex
13   offender address.  On July 11, 2024, HSI Special Agent (SA) Jackie Lovato knocked on the door of
14   apartment 203, which **SEVER** had previously reported as his apartment. SA Lovato had previously
15   parked his vehicle right next to another vehicle that records checks revealed was registered to Laurie
16   Sever and **Darren SEVER**. An adult male, recognized to be **SEVER** based on a review of his driver's
17   license photograph, opened the door to apartment 203 and agreed to provide SA Lovato a jump start
18   after he requested one. Minutes later, **SEVER** exited the apartment to provide the jump start. At that
19   time, HSI Supervisory SA (SSA) Joseph Ramos placed a call to the (559) 246-3276 phone number,
20   which was the number associated with the upload of the previously described image to Synchronoss, but
21   the call was not answered and went to voicemail.  SSA Ramos heard the voicemail greeting stated in
22   part, "This is Darren with [Unknown] Industries…"
23       19.    **SEVER** and SA Lovato walked down the stairs from the apartment and prepared the
24   vehicles for a jump start. HSI SSA then called the (559) 246-3276 phone number again. SA Lovato
25   indicated that he heard a phone ringing while he was standing near **SEVER**.  SA Lovato then observed
26   **SEVER** retrieve a black cellphone from his front left pocket, appear to look at the cellphone, say "520,"
27   and then place the cellphone back in his pocket. It should be noted SSA Ramos called from a "520" area
28   code. SSA Ramos called (559) 246-3276 again, and SA Lovato observed **SEVER** place the black

1  cellphone near his mouth but could not hear the words **SEVER** was saying. SSA Ramos asked for
2  "Pete," and the individual believed to be **SEVER**, based on SA Lovato's observations of **SEVER** with
3  the cellphone, stated, "I don't know who you are calling but this is not Pete." Contemporaneous with
4  SSA Ramos' call to (559) 246-3276, SA Lovato captured photographs, which are below and depict
5  **SEVER** on the black cellphone.



16      20.    Based on the facts of the investigation, and my training and experience, I believe **SEVER**
17  possessed a phone with phone number (559) 246-3276, which is the phone number associated with the
18  upload of the previously described image to Synchronoss, based on him retrieving a cellphone from his
19  clothing and answering it at the same time SSA Ramos called that phone number. I believe when
20  **SEVER** stated "520," **SEVER** acknowledged the call from a "520" area code, which was consistent
21  with the phone number SSA Ramos called from. Subscriber records also indicate that the (559) 246-
22  3276 number is subscribed to **SEVER**'s wife. Based on my knowledge, training, and experience, I know
23  it is common for family members to obtain cellular telephones and be the documented subscriber for
24  family members and not be the user and or have access to such telephone. For example, a father or
25  mother may obtain a cellular telephone for a child or young adult or in this case, a wife obtains a cellular
26  telephone for her husband to utilize.
27      21.    Based on the facts of the investigation, and my training and experience, I also believe
28  **SEVER** resided at the residence associated with the IP address that was used to upload to Synchronoss

the previously described image depicting minors engaged in sexually explicit conduct.  **SEVER** exited from and appeared to reside at the residence.  The residence was also **SEVER**'s prior registered sex offender address.

*EXECUTION OF FEDERAL SEARCH WARRANT*

22. On August 19, 2024, the Honorable Sheila K. Oberto, U.S. Magistrate Judge, signed a search warrant authorizing a search of **SEVER**'s residence, his person, and the vehicle registered to him and his wife for evidence, including in digital or electronic devices, of violations of §§ 2252(a)(2) and (a)(4)(B). The search warrant was executed on August 20, 2024.  Inside the residence was **SEVER**, his wife, and a nineteen-year-old male, later determined to be **SEVER**'s son.

23. During the search of the residence, agents located a black Samsung cellphone.  SA Lovato called the (559) 246-3276 phone number, which was the phone number associated with the upload to Synchronoss, and the phone did not ring. However, after SA Lovato placed the phone in airplane mode and went to the device's settings menu, the assigned telephone number for the phone displayed as (559) 246-3276.

24. SA Lovato interviewed **SEVER**'s wife, who confirmed that **SEVER**'s phone number was (559) 246-3276 and that he used a black Samsung cellphone.  She said she used a purple Samsung cellphone with the phone number ending in 9581.  She said their son used a black Samsung cellphone with a phone number ending in 6329.  **SEVER**'s wife also indicated that she probably looked in **SEVER**'s phone not even once a year, and that she never saw their son use **SEVER**'s cellphone.

25. Agents also interviewed **SEVER** following the execution of the search warrant.  After being advised of his *Miranda* rights, **SEVER** indicated that there were pictures of two young boys kissing on his cellphone.  **SEVER** also stated the images were "AI" and came from an app he uses.  Based on my training and experience, AI stands for artificial intelligence.  When asked if there would be images of children, **SEVER** said he could not think of anything else that would be on his cellphone.  When asked if he saw children engaging in sexual acts on his cellphone, **SEVER** stated "if it has been then it was purely by accident."  However, when later asked if he ever tried to look for images of children using his cellphone, **SEVER** said "probably, but you know it doesn't take long for my conscience to kind of kick in and get rid of it."  He said he would seek such images "once a week,

9

1  maybe." When asked if he was looking for videos involving children engaging in sex, **SEVER** said,

2  "No, no I'm looking for, I'm mainly looking for young, young guys or if it is somebody under 18, it

3  would be a like toon or something like that, cartoon." Based on my training and experience, "toon" is in

4  reference to animated images or videos or AI-generated images or videos. When asked if he looked at

5  images not involving "toon" or AI on his cellphone, **SEVER** said "yeah, it would have been accidental,"

6  he came across such images "somewhere for some reason," and that he was "not really searching for it, I

7  guess." He also described previously using an application to meet other individuals, and that he received

8  photographs of individuals through the application. He said he would delete the photographs if he

9  learned the individual was under eighteen years old. When asked if he ever looked at child

10 pornography, he said "I try not to." **SEVER** also said no one else used his cellphone but him.

11 ***REVIEW OF SEVER'S CELLPHONE EXTRACTION***

12     26.    On August 20, 2024, a mobile device extraction was performed on **SEVER**'s black

13 Samsung cellphone. A review of the extraction revealed the phone number associated with the phone

14 was (559) 246-3276. The device username was "Darren Sever aw," and there were various user

15 accounts with usernames or account names such as "Darren Sever," "darren_sever@yahoo.com," and

16 "kingbubba35." There were also selfie style photographs of **SEVER** on the phone. An inscription on

17 the device indicated that it was manufactured in Korea.

18     27.    Upon reviewing the extraction of **SEVER**'s cellphone, SA Lovato and your affiant

19 observed four images that, based on our training and experience, appeared to depict minors engaged in

20 sexually explicit conduct. Based on the metadata associated with the images, they were downloaded to

21 **SEVER**'s cellphone between on or about April 4, 2024, and on or about June 4, 2024. Descriptions of

22 two of the images recovered from **SEVER**'s phone are below:

23     a.    The screenshot image depicted four naked males holding clear beverage glasses in

24 a "toasting" nature in an outdoor setting with trees in the background and long green grass in the

25 foreground. Based on my experience and training, the males appeared to between the ages of nine to

26 fourteen years old based on growth and development. All four males were standing outdoors, and each

27 minor's penis could be observed. No pubic hair was observed. The image was located in the

28 "…android/gallery3d/cache" and based on Computer Forensics Agent (CFA) Ulises Solorio's training

and experience he opined the location of the image indicated the user demonstrated dominion and control of the image by previously saving the image to the device and also utilizing the device's photo gallery feature.

          b.     The image depicted a nude female standing in an outdoor water setting with a green brush in the background. Based on my training and experience, the female appeared to be between eight to ten years of age based on her growth and development. The minor female's arms are holding her hair at the top of her head and her bare chest and genitalia could be observed. There was no pubic hair nor breast development. The image was located in the "…android/gallery3d/cache" and Computer Forensics Agent (CFA) Ulises Solorio again opined the location of the image indicated the user demonstrated dominion and control of the image by saving the image to the device.

28.     Lastly, there was an image that did not have metadata or a time of download associated with it, but the storage location was annotated as "…Download/UT with me-You Like Boys." The image depicted a nude male, partially laying down on a tan cushion with a light-colored blanket along with a green wall in the background. The male was holding his own erect penis near the base of the penis with his right hand. The camera was focused on the penis and the male appeared to be between 14-16 year of age based on growth and development.  CFA Solorio opinioned that the aforementioned image image was intentionally downloaded due to the storage location on the device.

29.     Based on my training and experience, knowledge of this investigation, and speaking with other law enforcement officers including CFA Solorio, the aforementioned images depict minors engaged in sexually explicit conduct, particularly the lascivious exhibition of their genitalia.  While there were also five images that appeared artificially generated and depicted young children engaging in sex acts on **SEVER**'s cellphone, the above-described images were of real children, based on my training and experience, because of the genitalia observed, the background settings, and unique imperfections of the image such as shadows, lighting, stance, and my and CFA Solorio's familiarity with AI generated images and videos.

30.     I believe, due to agents and officers discovering the aforementioned images on **SEVER**'s cellphone, that **SEVER** received and was in possession of images depicting minors engaging in sexually explicit conduct in violation of §§ 2252(a)(2) and 2252(a)(4)(B).

## VI.   CONCLUSION

31. On the basis of my ongoing investigation, parts of which are summarized in this affidavit, I believe there is probable cause to conclude that **SEVER** has committed violations of §§ 2252(a)(2) and 2252(a)(4)(B).

32. Because this affidavit is written solely for the purpose of establishing probable cause for a criminal complaint and issuance of an arrest warrant, not every fact related to this investigation has been included.

33. I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

                          Fernando Rosario, Task Force Officer
                          Homeland Security Investigations

Affidavit submitted by email/PDF and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on **Sep 6, 2024**.

                          HONORABLE STANLEY A. BOONE
                          UNITED STATES MAGISTRATE JUDGE

Approved as to form:
/s/ BRITTANY GUNTER
BRITTANY GUNTER
Assistant U.S. Attorney